Ashburn, J.
This case is disposed of when the following question is answered, viz:
Did the court of common pleas err in holding that the portion of the assessment against and on the land described in the deed, for the road improvement, remaining unpaid at the time the deed was executed by Heis to Craig, was not an incumbrance, in such sense as to constitute a breach •of the covenant of title “ against all claims whatsoever ?”
We think the court did err in so ruling. That the assessment was an incumbrance on the land will clearly appear from a mere collation of the provisions of the statute of *553 March 29, 1867, authorizing such assessments to he made, bearing in mind that such assessments when made, in pursuance of the provisions of the act, are legal obligations, to be treated and collected as taxes on the land; .that the assessment was made and the road improvement completed before the deed was executed by Ileis to Craig.
This scheme of local taxation for road improvements, based upon the theory of benefit to the land on which it is .assessed, appears in the provisions of sections 1, 2, 4, 5, 6, and 7 of the act of March 29, 1867. 64 Ohio L. 81-83.
Sections one and two provide the power and point out the process to be pursued, by which a majority of resident land-owners, owning lands within two miles of the proposed improvement, may confer jurisdiction upon county commissioners to charge their own and other persons’ lands, located within such limits and to be benefited, with an assessment on such lands, to pay the costs andexpeuses of the improvement. Section 4 provides that viewers and an engineer-be sent out by the county commissioners to view the lands located within the two mile district, and to report “ an esti■mate of the expense of said improv,ement and the lots and lands” that “ought to be assessed for the expense of the same.” Section 5 provides that when the report of the viewers and engineer is approved by the commissioners, they shall “ enter upon their record,” among other things, “the lands which shall be assessed for the expense of the same.” ■Section 7 provides that when the improvement is ordered, the commissioners shall appoint three disinterested freeholders, “who shall, upon actual view of the premises, apportion the estimated expense of said improvement upon ■the real property embraced in the order aforesaid.” After designating how grievances may be adjusted, etc., .the section further provides that “ the final action of the commissioners shall be entered upon their records, together with the report, as confirmed, showing how the said estimated expense has been apportioned upon the lands ordered to be assessed as aforesaid. After the work shall have been completed, . . . the assessments on lands, under the pro *554 visions of this act, shall be placed upon a special duplicate,”' etc.
Section 7 provides: “ That for the purpose of raising the money necessary to meet the expense of said improvement, the commissioners of the county are hereby authorized to issue the bonds of the county, payable in installments, or at intervals, not exceeding in all five years, bearing interest,, etc., . . . payable semi-annually. . . . And the said assessment shall be divided in such manner as to meet the payment of principal and interest of said bonds, and so be placed upon the duplicate for taxation against the lands assessed, and collected in the same manner as other taxes,”' etc.
It is manifest, from the foregoing provisions of the-statute, that the lands charged with the burden of satisfying the costs and expenses of the improvement, are charged with the whole assessment so soon as the amount thereof is ascertained and ordered. The lands charged with the-assessment are required to be placed on a special duplicate as soon as the work is completed, and the total amount of the expense thereof ascertained. It is to be so divided on the special duplicate, in respect to time and amount of payment, as to meet the payment of principal and interest upon the bonds when due. The entire assessment when made becomes a lien upon the lands against which it is assessed,, but is to be paid in installments at times in the future, not to exceed five years — like a mortgage securing a gross sum, divided into parts falling due and becoming payable-at stated times in the future. The burden imposed is a present charge, to be discharged in detail in the future.
On January 7, 1869, when Heis executed the deed for-the land to Craig, the whole amount of the assessment upon the land had become a fixed and determined amount. That portion remaining unpaid was a subsisting charge upon the land, and as such, an incumbrance for which Heis was liable under his covenant in the deed to Craig “ against all claims whatsoever.” This covenant relates to the time-of the execution of the deed containing it, and by its terms- *555 embraces “ all incumbrances whatsoever,” and excepts none whatsoever. It was in the power of the parties, by an express provision in the deed, to have engrafted into> this covenant an exception for this road improvement assessment; but as no such exception was made, and Craig has been required to remove this incumbrance from his-land, the,covenant against incumbrances has been broken.
Under section 557 of the code of civil procedure, as amended April 18, 1870 (67 Ohio L. 116), Craig is entitled to have deducted from the purchase money, by way of counter-claim, the amount of the assessment upon the land paid by him, with accrued and accruing interest.
Judgment reversed and cause remanded to the court of common pleas for further proceedings.